IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NBA PROPERTIES, INC., MLB ADVANCED MEDIA, L.P., MAJOR LEAGUE BASEBALL PROPERTIES, INC., NHL ENTERPRISES, L.P., NFL PROPERTIES LLC, COLLEGIATE LICENSING COMPANY, LLC, and BOARD OF TRUSTEES OF MICHIGAN STATE UNIVERSITY,<br><br>Plaintiffs,<br><br>v.<br><br>THE PARTNERSHIPS and UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE "A,"<br><br>Defendants. | Case No. 21-cv-05520<br><br>**Judge Joan B. Gottschall**<br><br>**Magistrate Judge David Weisman** |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' *EX PARTE* MOTION FOR ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY INJUNCTION, A TEMPORARY TRANSFER OF THE DOMAIN NAMES, A TEMPORARY ASSET RESTRAINT, AND EXPEDITED DISCOVERY**

Plaintiffs NBA Properties, Inc. ("NBAP"), MLB Advanced Media, L.P. ("MLBAM"), Major League Baseball Properties, Inc. ("MLBP"), NHL Enterprises, L.P. ("NHLE"), NFL Properties LLC ("NFLP"), Collegiate Licensing Company, LLC, formerly IMG College Licensing, LLC ("CLC"), and Board of Trustees of Michigan State University ("MSU"), collectively "Plaintiffs," submit this Memorandum in support of their *Ex Parte*[1] Motion for Entry of a Temporary Restraining Order ("TRO"), including a temporary injunction, a temporary

---

[1] Plaintiffs' Motion is *ex parte* with respect to Defendants, but Plaintiffs will provide notice to AliExpress, Alibaba, Inc., Ant Financial Services Group ("Ant Financial"), and Alibaba Group Holding Ltd. (collectively, "AliExpress"), eBay, Inc. ("eBay"), PayPal, Inc. ("PayPal"), Amazon.com, Inc. ("Amazon"), ContextLogic Inc. d/b/a Wish.com ("Wish.com"), and GoDaddy Operating Company, LLC ("GoDaddy").

i

transfer of the Domain Names, a temporary asset restraint, and expedited discovery (the "*Ex Parte* Motion").

**TABLE OF CONTENTS**

I. INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II. STATEMENT OF FACTS ............................................................................................... 2

    A. Plaintiffs' Trademarks and Products ..................................................................... 2

    B. Defendants' Unlawful Conduct .............................................................................. 3

III. ARGUMENT .................................................................................................................... 4

    A. Standard for Temporary Restraining Order and Preliminary Injunction ............................. 5

    B. Plaintiffs Will Likely Succeed on the Merits ......................................................... 6

    C. There Is No Adequate Remedy at Law, and Plaintiffs Will Suffer Irreparable Harm in the Absence of Preliminary Relief .................................................. 8

    D. The Balancing of Harms Tips in Plaintiffs' Favor, and the Public Interest Is Served by Entry of the Injunction ................................................................... 9

IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE .......................................... 10

    A. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of Plaintiffs' Trademarks Is Appropriate ....................................... 11

    B. Transferring the Domain Names to Plaintiffs' Control Is Appropriate .............................. 11

    C. Preventing the Fraudulent Transfer of Assets Is Appropriate ............................................ 12

    D. Plaintiffs Are Entitled to Expedited Discovery .................................................... 13

V. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF ......................................... 14

VI. CONCLUSION ................................................................................................................ 14

MEMORANDUM

I. INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiffs request *ex parte* relief based on an action for federal trademark infringement, counterfeiting, and false designation of origin against the defendants identified in Schedule "A" to the Complaint (collectively, the "Defendants"). As alleged in Plaintiffs' Complaint, Defendants are promoting, advertising, marketing, distributing, offering for sale and/or selling products using counterfeit and infringing trademarks that are exact copies of one or more of the trademarks identified in the Complaint that are the subject of valid and enforceable United States Federal Registrations (collectively, the "Plaintiffs' Trademarks") (the "Counterfeit Products"), through at least the fully interactive, e-commerce stores[2] operating under the seller aliases identified in Schedule A to the Complaint (collectively, the "Seller Aliases").

Defendants run a sophisticated counterfeiting operation, and have targeted sales to Illinois residents by setting up and operating e-commerce stores using one or more Seller Aliases through which Illinois residents can purchase Counterfeit Products. The e-commerce stores operating under the Seller Aliases share unique identifiers establishing a logical relationship between them. Further, Defendants attempt to avoid and mitigate liability by operating under one or more Seller Aliases to conceal both their identities and the full scope and interworking of their operation. Plaintiffs are forced to file actions such as this to combat Defendants' counterfeiting of their registered trademarks, as well as to protect unknowing consumers from purchasing Counterfeit Products over the Internet. Defendants' ongoing unlawful activities should be restrained, and Plaintiffs respectfully request that this Court issue *ex parte* a Temporary Restraining Order.

---

[2] The e-commerce store urls are listed on Schedule A to the Complaint under the Online Marketplaces and Domain Names.

## II. STATEMENT OF FACTS

### A. Plaintiffs' Trademarks and Products

Plaintiff NBAP manages trademark affairs, including licensing and enforcement, for the National Basketball Association ("NBA"), an unincorporated association and professional basketball league comprised of thirty (30) member teams ("NBA Teams"). Declaration of Ayala Deutsch (the "Deutsch Decl.") at ¶ 3. NBAP is the owner and/or the exclusive licensee of the famous and distinctive trademarks of the NBA and the NBA Teams, and is authorized to enforce the rights in those trademarks. *Id*. at ¶ 4. Plaintiffs MLBAM and MLBP are the licensees of and/or act as agents for each of the thirty (30) Major League Baseball Clubs, the Office of the Commissioner of Baseball, and their respective affiliated and related entities (collectively, the "MLB Entities") with respect to a variety of matters including the licensing and/or protection of intellectual property rights of the applicable MLB Entities. Declaration of Tanya Fickenscher Leonard (the "Leonard Decl.") at ¶ 5. Plaintiff NHLE is the exclusive national United States licensee of the famous and distinctive trademarks of the National Hockey League ("NHL"), an unincorporated association organized as a joint venture to operate a professional ice hockey league consisting of thirty-one (31) member clubs (the "NHL Teams"). Declaration of Thomas H. Prochnow (the "Prochnow Decl") at ¶ 3. NHLE is authorized by the NHL to enforce the rights in the NHL League Trademarks. *Id*. at ¶ 4. Plaintiff NFLP is a Delaware limited liability company organized and existing under the laws of the State of Delaware, with its principal place of business at 345 Park Avenue, New York, New York. Declaration of Dolores F. DiBella (the "DiBella Decl.") at ¶ 3. NFLP is the authorized representative of the National Football League ("NFL") and its thirty-two (32) member clubs (the "Member Clubs") for the licensing and protection of their names, logos, symbols, and other identifying marks and indicia. *Id*. Plaintiff CLC is a trademark licensing and enforcement agent that represents more than 600 colleges,

universities, bowl games, and collegiate athletic conferences. Declaration of Vanessa Backman (the "Backman Decl.") at ¶ 3. Plaintiff MSU is a corporation organized and existing under the constitution and laws of the State of Michigan. Declaration of Samantha Stevens (the "Stevens Declaration") at ¶ 3. MSU manages all aspects of the University's operations, including management of trademark affairs. *Id.*

Plaintiffs hold registrations for their respective trademarks with the United States Patent and Trademark Office (collectively, "Plaintiffs' Trademarks"). Deutsch Decl. at ¶ 4; Leonard Decl. at ¶ 6; Prochnow Decl. at ¶ 4; DiBella Decl. at ¶ 4; Backman Decl. at ¶ 6; Stevens Decl. at ¶ 6.

### B. Defendants' Unlawful Conduct

The fame of Plaintiffs' Trademarks and the success of Plaintiffs' respective athletic brands and affiliated variety of products (collectively, "Plaintiffs' Genuine Products") have resulted in significant counterfeiting of the trademarks owned by these entities. *See* Declaration of Lindsay Conn (the "Conn Decl.") at ¶ 6. Trademark Management LLC ("TML") administers the Coalition to Advance the Protection of Sports logos ("CAPS") on behalf of its members MLBP, NHLE, NBAP, CLC, and NFLP to jointly address counterfeiting and other trademark infringement matters. *Id.* at ¶ 2. CAPS has created an anti-counterfeiting program in response to the significant counterfeiting of Plaintiffs' Trademarks, and has identified numerous fully interactive e-commerce stores, including those operating under the Seller Aliases, which are offering for sale and selling Counterfeit Products to consumers in this Judicial District. *Id.* at 6.

Plaintiffs' well-pleaded allegations regarding registration patterns, similarities among the e-commerce stores operating under the Seller Aliases and the Counterfeit Products for sale thereon, and common tactics employed to evade enforcement efforts establish a logical relationship among the Defendants and demonstrating that the Defendants are interrelated. If

Defendants provide additional credible information regarding their identities, Plaintiffs will take appropriate steps to amend the Complaint.

### III. ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Plaintiffs' respective reputations and the goodwill symbolized by their federally registered trademarks. Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* TRO where immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). The entry of a TRO is appropriate because it would immediately stop the Defendants from benefiting from their wrongful use of Plaintiffs' Trademarks and preserve the status quo until a hearing can be held.

In the absence of a TRO without notice, the Defendants can and likely will register new e-commerce stores under new aliases and move any assets to off-shore bank accounts outside the jurisdiction of this Court. *See* Declaration of Justin R. Gaudio (the "Gaudio Declaration.") at ¶¶ 5-11. Courts have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. S*ee Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"). As such, Plaintiffs respectfully request that this Court issue the requested *ex parte* TRO.

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331. Venue is proper pursuant to 28 U.S.C. § 1391.

This Court may properly exercise personal jurisdiction over Defendants since Defendants directly target business activities toward consumers in the United States, including Illinois, through at least the fully interactive e-commerce stores operating under the Seller Aliases. Specifically, Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, have sold Counterfeit Products to residents of Illinois. *See* Complaint at ¶¶ 2, 64, and 73. The commercial nature of the Seller Aliases and Defendants' intent to sell to Illinois residents is further confirmed by purchases that have been ordered from a sampling of the Seller Aliases. *Id*. at ¶ 2. *See, e.g., Christian Dior Couture, S.A. v. Lei Liu et al.,* 2015 U.S. Dist. LEXIS 158225, at *6 (N.D. Ill. Nov. 17, 2015) (personal jurisdiction proper over defendant offering to sell alleged infringing product to United States residents, including Illinois; no actual sale required).

Each of the Defendants is committing tortious acts in Illinois, is engaging in interstate commerce, and has wrongfully caused Plaintiffs substantial injury in the State of Illinois.

### A. Standard for Temporary Restraining Order and Preliminary Injunction

District Courts within this Circuit hold that the standard for granting a TRO and the standard for granting a preliminary injunction are identical. *See, e.g. Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 1:01-cv-00905, 2001 WL 527404, *1 (N.D. Ill. May 15, 2001) (citation omitted). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id.* The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id.* (quoting *Abbott Labs. v. Mead Johnson & Co.,* 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in what the Court has deemed "the sliding scale approach" – the more likely the plaintiff will succeed on the merits, the less the balance of harms need favor the plaintiff's position. *Id.*

### B. Plaintiffs Will Likely Succeed on the Merits

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, use[s] in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods … which such use is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). A Lanham Act trademark infringement claim has two elements. See 15 U.S.C. § 1125(a). First, plaintiff must show "that its mark is protected under the Lanham Act." *Barbecue Marx, Inc. v. 551 Ogden, Inc.*, 235 F.3d 1041, 1043 (7th Cir. 2000). Second, plaintiff must show that the defendant's unauthorized use of the mark is likely to cause confusion among consumers. *Id*.

In this case, Plaintiffs' Trademarks are registered with the United States Patent and Trademark Office, *see* Leonard Decl. at ¶ 6; Deutsch Decl. at ¶ 4; Prochnow Decl. at ¶ 4; DiBella Decl. at ¶ 4; Backman Decl. at ¶ 6; Stevens Decl. at ¶ 6. The registrations for Plaintiffs' Trademarks are valid, subsisting, in full force and effect, and many are incontestable pursuant to 15 U.S.C. § 1065. *Id*. The registrations for Plaintiff's Trademarks constitute *prima facie*

6

evidence of their validity and of Plaintiffs' exclusive respective rights to use the respective NBA, MLB, NHL, NFL, CLC and MSU Trademarks pursuant to 15 U.S.C. § 1057(b). Thus, Plaintiffs satisfy the first element of their Lanham Act claim.

The Seventh Circuit has held that where "one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion." *Microsoft Corp. v. Rechanik*, 249 F. App'x 476, 479 (7th Cir. 2007). Accordingly, the Court can presume a likelihood of confusion from Defendants' use of Plaintiffs' Trademarks. The result is the same when considered in light of the Seventh Circuit's seven enumerated factors to determine whether there is a likelihood of confusion, which include: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and (7) intent of the defendants to palm off their products as those of another. *AutoZone, Inc. v. Strick*, 543 F.3d 923, 929 (7th Cir. 2008). No one factor is dispositive, but the similarity of the marks, actual confusion, and the defendant's intent are "particularly important." *Id.*

Plaintiffs have submitted extensive documentation showing that Defendants are selling Counterfeit Products that look similar to Plaintiffs' Genuine Products and use infringing and counterfeit marks identical to Plaintiffs' Trademarks. Both Plaintiffs and Defendants advertise and sell their products to consumers via the Internet, targeting the same Internet consumers looking for Genuine Products. The consumer base is a diverse group of people who are likely to be confused. Indeed, it appears that Defendants are intentionally using Plaintiffs' Trademarks to confuse and deceive the consuming public into thinking that Defendants' Counterfeit Products are sponsored by, affiliated with, endorsed by or otherwise emanate from Plaintiffs. In that

regard, Defendants are selling counterfeit versions of Plaintiffs' Genuine Products that use counterfeit versions of one or more of Plaintiffs' Trademarks. Evidence of actual consumer confusion is not required to prove that a likelihood of confusion exists, especially given the compelling evidence that Defendants are attempting to "palm off" their goods as genuine Plaintiffs' Products. *CAE, Inc. v. Clean Air Eng'g, Inc.*, 267 F.3d 660, 685 (7th Cir. 2001).

In addition, Defendants clearly intend to cause consumer confusion. In particular, Defendants facilitated sales of Counterfeit Products by designing the Seller Aliases so that they appear to unknowing consumers to be legitimate online team stores, outlet stores, or wholesalers, including, in many instances, by copying the layouts, terms of service, legal notices and/or contact information found on the websites of Plaintiffs' authorized online retailers. Conn Decl. at ¶ 9. Defendants use unauthorized search engine optimization (SEO) tactics and targeted social media advertising and spamming so that the Seller Alias listings show up at or near the top of relevant search results and misdirect consumers searching for one or more of Plaintiffs' Genuine Products. *Id*. at ¶ 12. Accordingly, Plaintiffs are likely to establish a *prima facie* case of trademark infringement, counterfeiting, and false designation of origin.

### C. There Is No Adequate Remedy at Law, and Plaintiffs Will Suffer Irreparable Harm in the Absence of Preliminary Relief

The Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook,* 272 F.3d 424, 432 (7th Cir. 2001) (citation omitted). Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977) (citation omitted). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the

victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079, 1092 (7th Cir. 1988). As such, monetary damages are likely to be inadequate compensation for such harm. *Ideal Indus., Inc. v. Gardner Bender, Inc.,* 612 F.2d 1018, 1026 (7th Cir. 1979).

Defendants' unauthorized use of one or more of Plaintiffs' Trademarks has irreparably harmed and continues to irreparably harm Plaintiffs through diminished goodwill and brand confidence, damage to Plaintiffs' respective reputations, loss of exclusivity, and loss of future sales. Leonard Decl. at ¶¶ 14-18; Deutsch Decl. at ¶¶ 12-16; Prochnow Decl. at ¶¶ 12-16; DiBella Decl. at ¶¶ 12-16; Backman Decl. at ¶¶ 9-13; Stevens Decl. at ¶¶ 13-17. The extent of the harm to Plaintiffs' respective reputations and the goodwill associated therewith and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *See Promatek Industries, Ltd. v. Equitrac Corp.,* 300 F.3d 808, 813 (7th Cir. 2002) (finding that damage to plaintiff's goodwill was irreparable harm for which plaintiff had no adequate remedy at law). Plaintiffs will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1). Leonard Decl. at ¶ 19; Deutsch Decl. at ¶ 17; Prochnow Decl. at ¶ 17; DiBella Decl. at ¶ 17; Stevens Decl. at ¶ 18; and Backman Decl. at ¶ 14. As such, Plaintiffs should be granted preliminary relief.

### D. The Balancing of Harms Tips in Plaintiffs' Favor, and the Public Interest Is Served by Entry of the Injunction

As noted above, if the Court is satisfied that Plaintiffs have demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted*,* then it must next consider the harm that Defendants will suffer

9

if preliminary relief is granted, balancing such harm against the irreparable harm Plaintiffs will suffer if relief is denied. *Ty, Inc.*, 237 F.3d at 895. As willful infringers, Defendants are entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the mark of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed,* 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). Therefore, the balance of harms "cannot favor a defendant whose injury results from the knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n,* 929 F. Supp. 473, 478 (D.D.C. 1996).

As Plaintiffs have demonstrated, Defendants have been profiting from the sale of Counterfeit Products. Thus, the balance of equities tips decisively in Plaintiffs' favor. The public is currently under the false impression that Defendants are operating the e-commerce stores with the approval or endorsement of, and/or that the Seller Aliases are somehow affiliated with, one or more Plaintiffs. In this case, the injury to the public is significant, and the injunctive relief that Plaintiffs seek is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

### IV. THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

The Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark…." 15 U.S.C. § 1116(a).

### A. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of Plaintiffs' Trademarks Is Appropriate

Plaintiffs request a temporary injunction requiring the Defendants immediately to cease all use of Plaintiffs' Trademarks, or substantially similar marks, on or in connection with all e-commerce stores operating under the Seller Aliases. Such relief is necessary to stop the ongoing harm to Plaintiffs' Trademarks and associated goodwill, as well as harm to consumers, and to prevent the Defendants from continuing to benefit from their unauthorized use of Plaintiffs' Trademarks. The need for *ex parte* relief is magnified in today's global economy where counterfeiters can operate anonymously over the Internet. Plaintiffs are currently unaware of both the true identities and locations of the Defendants, as well as other e-commerce stores used to distribute Counterfeit Products. Many courts have authorized immediate injunctive relief in similar cases involving the unauthorized use of trademarks and counterfeiting. *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. Apr. 4, 2015) (unpublished) (Order granting *Ex Parte* Motion for Temporary Restraining Order).

### B. Transferring the Domain Names to Plaintiffs' Control Is Appropriate

As a part of the TRO, Plaintiffs also seek temporary transfer of the Domain Names to Plaintiffs' control in order to disable the counterfeit websites and electronically publish notice of this case to Defendants. Defendants involved in domain name litigation easily can, and often will, change the ownership of a domain name or continue operating the website while the case is pending. Accordingly, to preserve the status quo and ensure the possibility of eventual effective relief, courts in trademark cases involving domain names regularly grant the relief requested herein. *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. Apr. 4, 2015) (unpublished). As such, Plaintiffs respectfully request that, as part of the

11

TRO, the Court require the relevant registries and/or registrars for the Domain Names to transfer the Domain Names to Plaintiffs.

### C. Preventing the Fraudulent Transfer of Assets Is Appropriate

Plaintiffs request an *ex parte* restraint of Defendants' assets so that Plaintiffs' right to an equitable accounting of Defendants' profits from sales of Counterfeit Products is not impaired[3]. Issuing an *ex parte* restraint will ensure Defendants' compliance. If such a restraint is not granted in this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Specifically, upon information and belief, the Defendants in this case hold most of their assets in off-shore accounts, making it easy to hide or dispose of assets, which will render an accounting by Plaintiffs meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when a plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007). In addition, Plaintiffs have shown a strong likelihood of succeeding on the merits of their trademark infringement and counterfeiting claim, so according to the Lanham Act 15 U.S.C. § 1117(a)(1), Plaintiffs are entitled, "subject to the principles of equity, to recover ... defendant's profits." 15 U.S.C. § 1117(a)(1). Plaintiffs' Complaint seeks, among other relief, that Defendants account for and pay to Plaintiffs all profits realized by Defendants by reason of Defendants' unlawful acts. Therefore, this Court has the inherent equitable authority to grant Plaintiffs' request for a prejudgment asset freeze to preserve relief sought by Plaintiffs.

The Northern District of Illinois in *Lorillard Tobacco Co. v. Montrose Wholesale Candies* entered an asset restraining order in a trademark infringement case brought by a tobacco company against owners of a store selling counterfeit cigarettes. *Lorillard*, 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005). The Court recognized that it was explicitly allowed to issue a

---

[3] Plaintiffs have filed a Motion for Leave to File Under Seal certain documents for this same reason.

restraint on assets for lawsuits seeking equitable relief. *Id.* (citing *Grupo Mexicano de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308 (1999)). Because the tobacco company sought a disgorgement of the storeowner's profits, an equitable remedy, the Court found that it had the authority to freeze the storeowner's assets. *Id.*

Plaintiffs have shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts. Accordingly, an asset restraint is proper.

### D. Plaintiffs Are Entitled to Expedited Discovery

The United States Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, No. 2007 WL 4557812, *6 (N.D. Ill. Dec. 21, 2007). Courts have wide latitude in determining whether to grant a party's request for discovery. *Id.* (citation omitted). Further, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2).

Plaintiffs respectfully request expedited discovery to discover bank and payment system accounts Defendants use for their counterfeit sales operations. The expedited discovery requested in Plaintiffs' Proposed TRO is limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained. *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished). Plaintiffs' seizure and asset restraint may have little meaningful effect without the requested relief. Accordingly, Plaintiffs respectfully request that expedited discovery be granted.

13

## V. A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a TRO or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum,* 889 F.2d 787, 789 (8th Cir. 1989). Because of the strong and unequivocal nature of Plaintiffs' evidence of counterfeiting, infringement, and unfair competition, Plaintiffs respectfully request that this Court require Plaintiffs to post a bond of no more than Ten Thousand U.S. Dollars ($10,000.00). *See, e.g., Deckers Outdoor Corporation v. The Partnerships, et al.,* No. 15-cv-3249 (N.D. Ill. April 4, 2015) (unpublished) ($10,000 bond).

## VI. CONCLUSION

Defendants' counterfeiting operations are irreparably harming Plaintiffs' businesses, their famous brands, and consumers. Without entry of the requested relief, Defendants' sale of the Counterfeit Products will continue to lead prospective purchasers and others to believe that Defendants' Counterfeit Products have been manufactured by or emanate from Plaintiffs, when in fact, they have not. Therefore, entry of an *ex parte* TRO is necessary. In view of the foregoing and consistent with previous similar cases, Plaintiffs respectfully request that this Court enter a Temporary Restraining Order in the form submitted herewith.

Dated this 26th day of October 2021.        Respectfully submitted,

/s/ Justin R. Gaudio
Amy C. Ziegler
Justin R. Gaudio
Allyson M. Martin
Jake M. Christensen
Greer, Burns & Crain, Ltd.
300 South Wacker Drive, Suite 2500
Chicago, Illinois 60606
312.360.0080
312.360.9315 (facsimile)
aziegler@gbc.law
jgaudio@gbc.law
amartin@gbc.law
jchristensen@gbc.law

*Attorneys for Plaintiffs*
*NBA Properties, Inc., MLB Advanced Media, L.P., Major League Baseball Properties, Inc., NHL Enterprises, L.P., NFL Properties LLC, Collegiate Licensing Company, LLC and Board of Trustees of Michigan State University*