IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NBA PROPERTIES, INC., MLB ADVANCED MEDIA, L.P., MAJOR LEAGUE BASEBALL PROPERTIES, INC., NHL ENTERPRISES, L.P., NFL PROPERTIES LLC, COLLEGIATE LICENSING COMPANY, LLC, and BOARD OF TRUSTEES OF MICHIGAN STATE UNIVERSITY,<br><br>                      Plaintiffs,<br><br>v.<br><br>YIWU JING LAN ART & CRAFTS CO., LTD., et al.,<br><br>                      Defendants. | Case No. 21-cv-05520<br><br>**Judge Joan B. Gottschall**<br><br>**Magistrate Judge David Weisman** |

**PLAINTIFFS' MEMORANDUM IN SUPPORT OF THEIR
MOTION FOR ENTRY OF DEFAULT AND DEFAULT JUDGMENT**

Plaintiffs NBA Properties, Inc. ("NBAP"), MLB Advanced Media, L.P. ("MLBAM"), Major League Baseball Properties, Inc. ("MLBP"), NHL Enterprises, L.P. ("NHLE"), NFL Properties LLC ("NFLP"), Collegiate Licensing Company, LLC, formerly IMG College Licensing, LLC ("CLC"), and Board of Trustees of Michigan State University ("MSU") (collectively, "Plaintiffs") submit the following memorandum in support of their Motion for Entry of Default and Default Judgment under Fed. R. Civ. P. 55 against the defendants identified on Schedule A attached hereto as Exhibit 1[1] (collectively, the "Defaulting Defendants") based on Plaintiffs' action for trademark infringement, counterfeiting and false designation of origin.

---

[1] "Defaulting Defendants" as used herein includes all Defendants listed on Schedule A attached as Exhibit 1 that have not been noted as "DISMISSED." The Schedule A attached as Exhibit 1 is also attached to Plaintiff's proposed Final Judgment Order.

1

## STATEMENT OF FACTS

Plaintiff NBAP manages trademark affairs, including licensing and enforcement, for the National Basketball Association ("NBA"), an unincorporated association and professional basketball league comprised of thirty (30) member teams ("NBA Teams"). Amended Complaint, [41] at ¶ 6. NBAP is the owner and/or the exclusive licensee of the famous and distinctive trademarks of the NBA and the NBA Teams, and is authorized to enforce the rights in those trademarks. *Id.* at ¶ 7.

Plaintiff MLBP is owned by the Office of the Commissioner of Baseball (the "BOC"), and is a licensee of, and acts as agent for, the Major League Baseball Clubs (the "MLB Clubs"), the BOC and their affiliates and related entities (collectively, with MLBAM and MLBP, the "MLB Entities") with respect to a variety of matters including the licensing and protection of the MLB Clubs' trademarks throughout the world. *Id.* at ¶ 18. Plaintiff MLBAM is the Internet and interactive media company of Major League Baseball. *Id.* at ¶ 16.

Plaintiff NHLE is the exclusive national United States licensee of the famous and distinctive trademarks of the National Hockey League ("NHL"), an unincorporated association organized as a joint venture to operate a professional ice hockey league consisting of thirty-one (31) member clubs (the "NHL Teams"). *Id.* at ¶¶ 28 and 29. NHLE is authorized by the NHL to enforce the rights in the NHL Trademarks. *Id.* at ¶ 29.

Plaintiff NFLP is the authorized representative of the National Football League ("NFL") and its thirty-two (32) member clubs, including the Chicago Bears (the "Member Clubs") for the licensing and protection of their names, logos, symbols, and other identifying marks and indicia. *Id.* at ¶ 37.

Plaintiff CLC is a trademark licensing and enforcement agent that represents more than 190 colleges, universities, bowl games, and collegiate athletic conferences. *Id.* at ¶ 47. Plaintiff Regents of MSU is the owner of the famous and distinctive trademarks of MSU and is responsible for protecting those trademarks. *Id.* at ¶ 56.

Plaintiffs hold registrations for their respective trademarks with the United States Patent and Trademark Office (collectively, "Plaintiffs' Trademarks"). *Id.* at ¶¶ 7, 19, 29, 38, 50 and 56. Additional factual assertions regarding Plaintiffs in Paragraphs 5-63 of the Amended Complaint are incorporated herein. *Id.* at ¶¶ 5-63.

Defaulting Defendants are individuals and business entities of unknown makeup who, either individually or jointly, own and/or operate one or more of the e-commerce stores under at least the seller aliases identified on Schedule A (collectively, the "Seller Aliases"). *Id.* at ¶ 64, Exhibit 1. Defaulting Defendants have targeted sales to Illinois residents by setting up and operating e-commerce stores that target U.S. consumers using one or more Seller Aliases, offer shipping to the U.S., including Illinois, accept payment in U.S. dollars, and have offered for sale and/or sold unauthorized and unlicensed products using counterfeits of one or more trademarks owned and/or licensed by the Plaintiffs (the "Counterfeit Products") to residents of Illinois. *Id.* at ¶ 68. Additional factual assertions regarding Defaulting Defendants in Paragraphs 64 – 77 of the Amended Complaint are incorporated herein. *Id.* at ¶¶ 64-77.

Plaintiffs filed this action on October 18, 2021 [1], and subsequently filed their Amended Complaint [41]. On December 3, 2021, this Court granted Plaintiffs' *Ex Parte* Motion for Entry of a Temporary Restraining Order (the "TRO") [47], subsequently extended the TRO [53], and converted the TRO [47] to a Preliminary Injunction [60]. Paragraph 6 of the Preliminary Injunction permitted Plaintiffs to complete service of process to Defendants by electronic

publication on a website to which the Domain Names which were transferred to Plaintiffs' control redirect, or by sending an e-mail to the e-mail addresses identified in Exhibits 1 and 2 to the Declaration of Lindsay Conn and any e-mail addresses provided for Defendants by Third Party Providers that includes a link to said website. [60] at ¶ 6. The Defendants were properly served on January 3, 2022. [61]. None of the Defaulting Defendants have filed an answer or otherwise pled in this action. *See* Declaration of Justin R. Gaudio (the "Gaudio Declaration") at ¶ 2.

Pursuant to Federal Rule of Civil Procedure 55(a) and (b)(2), Plaintiffs now move this Court for an Order entering default and default judgment finding that Defaulting Defendants are liable on all counts of Plaintiffs' Amended Complaint. Fed. R. Civ. P. 55(a) and (b)(2). Plaintiffs further seek an award of statutory damages against each of the Defaulting Defendants as authorized by 15 U.S.C. § 1117(c)(2) for willful trademark counterfeiting for use of counterfeits of Plaintiffs' Trademarks on products sold through each of the e-commerce stores operating under the Seller Aliases. Plaintiffs also seek entry of a permanent injunction prohibiting Defaulting Defendants from selling Counterfeit Products, an Order that the domain names used by Defaulting Defendants to sell Counterfeit Products be permanently transferred to Plaintiffs, and that all assets in Defaulting Defendants' financial accounts, including those operated by PayPal, Inc. ("PayPal"), Alipay, Wish.com and Amazon, as well as any newly discovered assets, be transferred to Plaintiffs.

## ARGUMENT

**I.      JURISDICTION AND VENUE ARE PROPER IN THIS COURT**

This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051, *et seq.*, 28 U.S.C. § 1338(a)-(b) and 28

U.S.C. § 1331. Venue is proper in this Court pursuant to 28 U.S.C. § 1391, and this Court may properly exercise personal jurisdiction over Defendants since each of the Defendants directly targets business activities toward consumers in Illinois and causes harm to Plaintiffs' business within this Judicial District. *See* [41] at ¶¶ 4, 48, 83, 89; *uBID, Inc. v. GoDaddy Grp., Inc*. 623 F.3d 421, 423-24 (7th Cir. 2010) (without benefit of an evidentiary hearing, plaintiff bears only the burden of making a *prima facie* case for personal jurisdiction; all of plaintiff's asserted facts should be accepted as true and any factual determinations should be resolved in its favor).

Through at least the fully interactive, e-commerce stores operating under the Seller Aliases, each of the Defaulting Defendants has targeted sales from Illinois residents by setting up and operating e-commerce stores that target United States consumers using one or more Seller Aliases, offer shipping to the United States, including Illinois, accept payment in U.S. dollars and, on information and belief, has sold Counterfeit Products to residents of Illinois. [41] at ¶ 2. Personal jurisdiction exists over Defaulting Defendants since they directly target their business activities toward consumers in the United States, including Illinois. Specifically, Defaulting Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive e-commerce stores under the Seller Aliases through which Illinois residents can purchase Counterfeit Products. *Id*. *See Monster Energy Co. v. Chen Wensheng, et al.,* 2015 U.S. Dist. LEXIS 132283, at *11 (N.D. Ill. Sept. 29, 2015).

**II.    PLAINTIFFS HAVE MET THE REQUIREMENTS FOR ENTRY OF DEFAULT**

Pursuant to Rule 55(a) of the Federal Rules of Civil Procedure, "when a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Fed. R. Civ. P. 55(a). On November 8, 2021, Plaintiffs filed their Amended Complaint alleging federal

trademark infringement and counterfeiting, 15 U.S.C. § 1114 (Count I) and false designation of origin, 15 U.S.C. § 1125(a) (Count II). [41]. The Defendants were properly served with the Amended Complaint on January 3, 2022. [61]. Despite having been served with process, none of the Defaulting Defendants have filed an answer or otherwise pled in this action. Gaudio Declaration at ¶ 2. Upon information and belief, the Defaulting Defendants are not active-duty members of the U.S. armed forces. *Id.* at ¶ 3. Accordingly, Plaintiffs ask for entry of default against the Defaulting Defendants.

### III. PLAINTIFFS HAVE MET THE REQUIREMENTS FOR ENTRY OF DEFAULT JUDGMENT

Rule 55(b)(2) of the Federal Rules of Civil Procedure provides for a court-ordered default judgment. A default judgment establishes, as a matter of law, that defendants are liable to plaintiff on each cause of action alleged in the complaint. *United States v. Di Mucci*, 879 F.2d 1488, 1497 (7th Cir. 1989). When the Court determines that a defendant is in default, the factual allegations of the complaint are taken as true and may not be challenged, and the defendants are liable as a matter of law as to each cause of action alleged in the complaint. *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994).

As noted above, Plaintiffs served Defendants on January 3, 2022. [61]. More than twenty-one (21) days have passed since the Defaulting Defendants were served, and no answer or other responsive pleading has been filed by any of the Defaulting Defendants. *See* Fed. R. Civ. P. 12(a)(1)(A). Accordingly, default judgment is appropriate, and consistent with previous similar cases in front of this Court, Plaintiffs request an award of statutory damages as authorized by 15 U.S.C. § 1117(c)(2) for willful trademark counterfeiting against each of the Defaulting Defendants for use of counterfeits of Plaintiffs' Trademarks on products sold through the e-commerce stores operating under the Seller Aliases. Plaintiffs also seek entry of a permanent

injunction prohibiting Defaulting Defendants from selling Counterfeit Products, an order that domain names used by Defaulting Defendants to sell Counterfeit Products be permanently transferred to Plaintiffs, and that all assets in Defaulting Defendants' financial accounts, including those operated by PayPal, Alipay, Wish.com and Amazon, and any newly identified accounts, be transferred to Plaintiffs.

### A. Trademark Infringement and Counterfeiting and False Designation of Origin

To properly plead a claim of trademark infringement and counterfeiting pursuant to the Lanham Act, a plaintiff must allege that (1) its mark is distinctive enough to be worthy of protection, (2) defendants are not authorized to use the mark; and (3) defendant's use of the mark causes a likelihood of confusion as to the origin or sponsorship of defendant's products. *Bliss Salon Day Spa v. Bliss World LLC,* 268 F.3d 494, 496-97 (7th Cir. 2001)).

Plaintiffs alleged in their Amended Complaint that Plaintiffs are the exclusive owners, legal representatives and/or exclusive licensees or licensing representatives of their respective Plaintiffs' Trademarks, and that Defaulting Defendants have sold, offered to sell, marketed, distributed and advertised, and are still selling, offering to sell, marketing, distributing, and advertising products bearing counterfeit reproductions of Plaintiffs' Trademarks, that Defaulting Defendants have knowledge of Plaintiffs' rights in Plaintiffs' Trademarks, that Defaulting Defendants are not authorized to use Plaintiffs' Trademarks for any reason, and that Defaulting Defendants' use of Plaintiffs' Trademarks causes a likelihood of confusion. [41] at ¶¶ 86-88.

Plaintiffs also alleged in their Amended Complaint that Defaulting Defendants are using the federally registrered Plaintiffs' Trademarks in connection with the sale of Counterfeit Products. [41] at ¶¶ 68, 69 and 77. As such, this creates a likelihood of confusion, mistake, and deception among the general public as to the affiliation, connection, or association with Plaintiffs

or the origin, sponsorship, or approval of Defaulting Defendants' Counterfeit Products by Plaintiffs. *Id.* at ¶ 86.

Since the Defaulting Defendants have failed to answer or otherwise plead in this matter, the Court must accept the allegations contained in Plaintiffs' Amended Complaint as true. *See* Fed. R. Civ. P. 8(b)(6); *Am. Taxi Dispatch, Inc., v. Am. Metro Taxi & Limo Co.,* 582 F. Supp. 2d 999, 1004 (N.D. Ill. 2008). Accordingly, Plaintiffs request entry of judgment with respect to Counts I and II for willful trademark infringement, counterfeiting of Plaintiffs' Trademarks and willful false designation of origin against the Defaulting Defendants.

## IV. PLAINTIFFS ARE ENTITLED TO A STATUTORY DAMAGES AWARD

### A. Statutory Damages Are Appropriate in this Case

Pursuant to the statutory damages provision of the Lanham Act, 15 U.S.C. § 1117(c), a plaintiff in a case involving the use of a counterfeit mark may elect to receive "not less than $1,000 or more than $200,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(1). When the counterfeiting is found to be willful, 15 U.S.C. § 1117(c)(2) provides for statutory damages of up to "$2,000,000 per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." 15 U.S.C. § 1117(c)(2).

The lack of information regarding Defaulting Defendants' sales and profits makes statutory damages particularly appropriate for default cases like the instant case. *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, *9 (N.D. Ill. 2004) (citing S. Rep. No. 177, 104th Cong. 1995). Likewise, Courts have recognized that statutory damages should be awarded without requiring an evidentiary hearing. *See Lorillard Tobacco Co. v. Montrose Wholesale Candies & Sundries, Inc.*, 2008 U.S. Dist. LEXIS 31761, *11 (N.D. Ill. Apr. 17, 2008).

### B. A Statutory Damages Award Is Warranted

Although 15 U.S.C. § 1117(c) contains the dollar range for possible statutory damage awards, the only guidance provided by the statute for how to determine a damage award within the statutory dollar range is "as the court considers just." 15 U.S.C. § 1117(c). Courts interpreting 15 U.S.C. § 1117(c) have analogized case law applying the statutory damage provision of the Copyright Act contained in 17 U.S.C. § 504(c). *See Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, *10; *Luxottica USA LLC v. The Partnerships, et al.,* 2015 U.S. Dist. LEXIS 78961, *5 (N.D. Ill. 2015); *Sara Lee v. Bags of New York, Inc.*, 36 F. Supp. 2d 161, 166 (S.D.N.Y. 1999).

The Seventh Circuit's standard for awarding statutory damages for copyright infringement under 17 U.S.C § 504(c) is articulated in *Chi-Boy Music v. Charlie Club*, 930 F.2d 1224, 1229 (7th Cir. 1991). Under the *Chi-Boy* standard, a court awarding statutory damages is "not required to follow any rigid formula," but instead "enjoys wide discretion." *Id*. In computing the award amount, a court may consider factors such as "the difficulty or impossibility of proving actual damages, the circumstances of the infringement, and the efficacy of the damages as a deterrent." *Id*. Courts in this district have also considered the significant value of a plaintiff's brand and the efforts taken to protect, promote and enhance that brand in determining the appropriate dollar figure for the award. *Lorillard Tobacco Co.,* 2004 U.S. Dist. LEXIS 22563, *16.

In addition, courts have awarded significant damage amounts where a defendant's counterfeiting activities attracted wide market exposure through Internet traffic or advertisement. *See Coach, Inc. v. Ocean Point Gifts*, 2010 U.S. Dist. LEXIS 59003, *15-16 (D.N.J. Jun. 14, 2010) (significant damage awards in counterfeit cases were "due in part to the wide market

exposure that the Internet can provide"); *Burberry Ltd. v. Designers Imports, Inc.*, 2010 U.S. Dist. LEXIS 3605, *28-29 (S.D.N.Y. Jan. 19, 2010) (damages amount based, in part, on "Defendant's ability to reach a vast customer base through internet advertising").

In similar cases involving willful Internet-based counterfeiting, courts have awarded statutory damages, including up to the maximum provided by law, to the plaintiff to serve the purposes of: (1) deterring the defendant and others situated like him from bringing into commerce counterfeit goods, (2) compensating the plaintiff for damages caused by defendant's infringement, and (3) punishing the defendant appropriately for his counterfeiting activities. *See, e.g., Burberry Limited, et al. v. XIE JI PING, et al,* No. 18-cv-07442 (N.D. Ill. Jan. 15, 2019) (unpublished) (Docket Nos. 42 and 43) (awarding $1,000,000 in statutory damages per defendant); *NBA Properties, Inc., et al. v. YU ZICHENG, et al.*, 19-cv-04412 (N.D. Ill. Oct. 8, 2019) (unpublished) (Docket Nos. 60 and 61) (awarding $500,000 in statutory damages per defendant); *H-D U.S.A., LLC v. DLLL, et al.,* No. 19-cv-07629 (N.D. Ill. Feb. 18, 2020) (unpublished) (Docket Nos. 64 and 65) (same). Given the Court's clear discretion in determining the appropriate amount of the statutory damages award within the statutory limits of 15 U.S.C. § 1117(c), and the facts specific to this case, Plaintiffs respectfully request the Court's entry of an award of five hundred thousand dollars ($500,000) per Defaulting Defendant.

      i.    <u>Defaulting Defendants' Willful Counterfeiting Supports the Requested Award</u>

Defaulting Defendants' counterfeiting was willful and, therefore, at a minimum, warrants the requested statutory damages award. "Willful infringement may be attributed to the defendant's actions where he had knowledge that his conduct constituted infringement or where he showed a reckless disregard for the owner's rights." *Lorillard Tobacco Co. v. S & M Cent. Serv. Corp.,* 2004 LEXIS 22563, *19-20 (N.D. Ill. Feb. 25, 2005). Knowledge need not be proven directly, but can be inferred from a defendant's conduct. *Id.* at 20. As alleged in

Plaintiffs' Amended Complaint, Defaulting Defendants facilitated sales by designing the e-commerce stores so that they appeared to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers. [41] at ¶ 69. As such, Defaulting Defendants clearly had knowledge that their activities constituted infringement or at least a reckless disregard for Plaintiffs' rights in the Plaintiffs' Trademarks. [41] at ¶¶ 79-81; *see also* [15-17]. Finally, District Courts have deemed counterfeiting willful when defendants default. *See Burberry Limited, et al. v. The Partnerships, et al,* No. 14-cv-08220 (N.D. Ill. Dec. 11, 2014) (unpublished) (Docket Nos. 44 and 45); *Oakley, Inc. v. The Partnerships, et al.,* No. 13-cv-02958 (N.D. Ill. June 17, 2013) (unpublished) (Docket Nos. 36 and 37).

    ii.    <u>The Value of the Plaintiffs' Trademarks and Plaintiffs' Efforts to Promote, Protect and Enhance the Brands Justify the Requested Award</u>

In determining an appropriate statutory damage award, this Court should be guided by the *Lorillard* case and consider the "significant value of [the brand] and the efforts taken to protect, promote and enhance [that brand]." *Lorillard Tobacco Co.*, 2004 U.S. Dist. LEXIS 22563, at *16. Plaintiffs have expended substantial time, money, and other resources in developing, advertising and otherwise promoting the Plaintiffs' Trademarks. Thus, Plaintiffs' request for a high statutory damages award should be given favorable consideration in view of the value of the Plaintiffs' brands and the extensive steps being taken by Plaintiffs to protect, promote and enhance their brands. *See Monster Energy Company*, 2015 U.S. Dist. LEXIS 86956, at *11; *Luxottica USA LLC v. The Partnerships, et al.*, 2015 U.S. Dist. LEXIS 78961, at *7-8 (N.D. Ill. June 18, 2015).

    iii.    <u>Defaulting Defendant's Wide Exposure over the Internet Merits the Requested Award</u>

Defendants who operate online attract wide market exposure through Internet traffic and/or advertisement. Defaulting Defendants' wide market exposure over the Internet warrants

the requested statutory damages award. *See H-D U.S.A., LLC v. Guangzhou Tomas Crafts Co., et al.*, 2017 U.S. Dist. LEXIS 207613 (N.D. Ill. Dec. 18, 2017) (awarding $150,000 in statutory damages, noting "the fact that defendant's counterfeiting took place online favors a higher statutory damages award because online counterfeiting can reach a much wider audience than counterfeiting through a physical store."); *Luxottica USA LLC v. The Partnerships, et al.*, 2017 U.S. Dist. LEXIS 29999, at *11-12 (Mar. 2, 2017 N.D. Ill.) (summary judgment and awarding $100,000 in statutory damages "because [defendant] advertised [counterfeit goods] on the internet, allowing for distribution far greater than if it sold the hats in a brick-and-mortar store.").

      iv.    The Requested Statutory Damages Award Must Sufficiently Deter Defaulting Defendants and Similar Online Counterfeit Sellers

The remedy imposed must provide a sufficient deterrent effect to ensure that the guilty party will not engage in further infringing conduct. *Sands, Taylor & Wood,* 34 F.3d at 1348. In *Phillip Morris USA Inc. v. Marlboro Express*, the Court stated that due to "the size of the potential profit given the quantities of [counterfeit goods] involved, and the need for a substantial deterrent to future misconduct by defendants and other counterfeit traffickers ... plaintiff is entitled to the maximum statutory award under 15 U.S.C. § 1117(c)(2)." 2005 U.S. Dist. LEXIS 40359, at *28 (E.D.N.Y. Aug. 26, 2005). *See also Luxottica USA LLC v. The Partnerships, et al.*, 2015 U.S. Dist. LEXIS 78961, at *8.

To reach global consumers, counterfeiters advertise, offer for sale, and sell their products via social media platforms and popular e-commerce sites. In the 2018 fiscal year alone, U.S. government seizures of counterfeit goods totaled more than $1.3 billion MSRP. [13-1]. China and Hong Kong remained the primary sources of counterfeit and pirated goods seized, accounting for more than 87 percent of all seizures. *Id*. Additionally, a February 2017 report commissioned by Business Action to Stop Counterfeiting and Piracy (BASCAP) and the

International Trademark Association (INTA) titled *The Economic Impacts of Counterfeiting and Piracy* included findings that counterfeit and pirated products account for billions in economic losses, resulting in tens of thousands of lost jobs for legitimate businesses and broader economic losses, including lost tax revenue. [13-3]. As such, the requested statutory damages award is necessary to deter both Defendants and other similarly situated online sellers.

## V. PLAINTIFFS ARE ENTITLED TO PERMANENT INJUNCTIVE RELIEF

In addition to the foregoing relief, Plaintiffs respectfully request entry of a permanent injunction enjoining Defaulting Defendants from infringing or otherwise violating Plaintiffs' registered trademark rights in Plaintiffs' Trademarks, including at least all injunctive relief previously awarded by this Court to Plaintiffs in the TRO and Preliminary Injunction. Plaintiffs are also entitled to injunctive relief so they can quickly take action against any new e-commerce stores selling Counterfeit Products that are found to be linked to Defaulting Defendants. *See Burberry Limited, et al. v. The Partnerships, et al,* No. 1:14-cv-08220 (N.D. Ill. Dec. 11, 2014) (unpublished) (Docket Nos. 44 and 45); *Oakley, Inc. v. The Partnerships, et al.,* No. 1:13-cv-02958 (N.D. Ill. June 17, 2013) (unpublished) (Docket Nos. 36 and 37).

## CONCLUSION

Plaintiffs respectfully request that the Court enter default and default judgment against each Defaulting Defendant, award statutory damages in the amount of five hundred thousand dollars ($500,000) per Defaulting Defendant pursuant to 15 U.S.C. § 1117(c) and enter a permanent injunction order prohibiting Defaulting Defendants from selling Counterfeit Products, permanently transferring the domain names used by Defaulting Defendants to sell Counterfeit Products to Plaintiffs, and transferring all assets in Defaulting Defendants' financial accounts, including those operated by PayPal, Alipay, Wish.com and Amazon, to Plaintiffs.

Dated this 26th day of January 2022.   Respectfully submitted,

                /s/ Allyson M. Martin
                Amy C. Ziegler
                Justin R. Gaudio
                Allyson M. Martin
                Jake M. Christensen
                Greer, Burns & Crain, Ltd.
                300 South Wacker Drive, Suite 2500
                Chicago, Illinois 60606
                312.360.0080
                312.360.9315 (facsimile)
                aziegler@gbc.law
                jgaudio@gbc.law
                amartin@gbc.law
                jchristensen@gbc.law

*Attorneys for Plaintiffs NBA Properties, Inc., MLB Advanced Media, L.P., Major League Baseball Properties, Inc., NHL Enterprises, L.P., NFL Properties LLC, Collegiate Licensing Company, LLC, and Board of Trustees of Michigan State University*